MUNICIPALITY OF AGUADILLA, ETC., Plaintiff and Appellant, v. ANTONIO FERNÓS ISERN, COMMISSIONER OF HEALTH OF PUERTO RICO, ET AL., Defendants and Appellees.

No. 8902.    Argued June 6, 1944.—Decided July 14, 1944.

F. Fernández Cuyar and Enrique González Mena for appellant.    Jesús A. González, Acting Attorney General, and Carmen B. Hernández, Deputy Attorney General, for appellees.

MR. JUSTICE SNYDER delivered the opinion of the court.

This is a petition for injunction brought by the Municipality of Aguadilla, represented by its Mayor, against the Commissioner of Health and the Registrar of Vital Statistics of Aguadilla.   The relief prayed for is that the defendants be restrained from removing the books of the old civil registries which are now located in the city hall of the municipality.   The plaintiff has appealed from the judgment of the district court dismissing its petition.

The fundamental question to determine here is whether there is any basis for the contention of the municipality that

the commissioner lacks the authority to order the removal of the old civil registry books from the city hall of the municipality to another place within the Municipality of Aguadilla. A determination of that question requires a detailed examination of the statutory regulation of the registration of vital statistics in Puerto Rico.

██ In 1911 the Legislature established civil registries in all the municipalities of Puerto Rico. These registries were in charge of the municipal secretaries, under the immediate supervision of the mayors. Under this Act the municipal secretaries issued certified copies of the entries registered in the books which were in their possession. These offices functioned, in short, as municipal dependencies (Act No. 61, Laws of Puerto Rico, 1911).

Act No. 24, Laws of Puerto Rico, 1931, expressly repealing Act No. 61 of 1911, established a completely different system for the registration of vital statistics. A General Registry of Vital Statistics for Puerto Rico was created, to be established in the Bureau of Vital Statistics of the Department of Health. The department was given charge of all matters in connection with the registration of births, marriages and deaths, and was given the duty of preparing all instructions and forms in connection therewith. The Act provides that the department "shall see to it that the same are registered in each primary registry district. . .", and "The Commissioner of Health shall see to it that this Act is uniformly enforced and applied throughout. . . Porto Rico." (Section 3.) The Act also provides that "Each municipality. . . shall constitute a primary registry district. . ." (§4), and that "There shall be a Registrar of Vital Satistics in each primary registry district, who shall be appointed by the Mayor. . . with the approval of the Municipal Assembly. . ." (§5).

Generally speaking, Act No. 24 of 1931 put the machinery and operation of the General Registry under the

Commissioner of Health. Nevertheless, certain vestiges of the old municipally-operated system remained. For example, as we have seen, the registrars continued to be named by the mayors. And since the registrars continued to be municipal appointees, the Legislature provided in §32 of Act No. 24 "That all records of births, marriages, and deaths, which shall have occurred or taken place in Puerto Rico prior to the date on which this Act takes effect, shall remain in the files of the respective municipalities under the custody of the municipal secretary, who, on petition of any interested person, shall issue certified copies thereof, upon payment. . . of a fee. . . which. . . shall be covered into the municipal treasury." It was obviously logical for the Legislature to provide that the old registry books "shall remain in the files of the respective municipalities", if they were to continue in the custody of the municipal secretary, who was also to be the officer empowered to issue certified copies of such records.

Act No. 28, Laws of Puerto Rico, 1935, Special Session, went considerably further in the direction of centralization of the registration of vital statistics in the hands of the Commissioner of Health. Act No. 28 transferred to the commissioner the power of appointment and removal of the registrars. It also provided "that the offices of the vital statistics registrars shall be established in the public-health units and sub-units, where there are any, and in the local health offices in those municipalities where there are no units; *Provided, further,* that the books of the old civil registries now in the hands of the municipal authorities are hereby submitted to the jurisdiction and authority of the Commissioner of Health of Puerto Rico, and they shall remain in the places which now have been designated for their files in the respective municipalities, under the immediate custody of the registrars of vital statistics, who are hereby authorized to issue certified copies of all the entries that

appear therein, upon the payment by the applicant of a fee of fifty (50) cents in internal-revenue stamps for each certified copy of each birth, marriage or death."[1]

We thus see that for the first time municipal officials are divested of all connection with vital statistics. Registrars are appointed and removed by the commissioner; the offices of the registrars are shifted to public health units; the books of the old civil registries previously in the hands of the municipal authorities are transferred to the jurisdiction and authority of the commissioner and placed under the immediate custody of the registrars; and the registrars—not the municipal secretaries—are authorized to issue certified copies of all entries appearing in the records.

The municipality nevertheless insists that the language of §1 of Act No. 28 of 1935, amending §5 of the Act—that the books of the old civil registries "shall remain in the places which now have been designated for their files in the respective municipalities, under the immediate custody of the registrars of vital statistics. . ."—means that the said old civil registries must continue to remain in the city halls of the respective municipalities.

The municipality asserts that this provision has persisted throughout all the amendments to the Act. But the first thing we note is that this language, found in Act No. 28 of 1935, is not exactly the same as that found in §32 of Act No. 24 of 1931. The latter very clearly provides that the old books "shall remain *in the files of the respective municipalities* under the custody of the municipal secretary. . .". (Italics ours.) The reason for that provision we have already seen: the registrar was a municipal appointee, and the municipal secretary issued the certified copies. But the language of Act No. 28 of 1935 is somewhat different.

---

[1] The amendments to the Act made by Act No. 99, Laws of Puerto Rico, 1943, shed no light on the problem before us; they relate to the creation of a trust fund of the fees collected by registrars for issuing certified copies of records, and other matters not involved herein.

The clear mandate of Act No. 24 is changed to read that the books "shall remain *in the places* which now have been designated for their files in the respective municipalities, under the immediate custody of the registrars of vital statistics, who are hereby authorized to issue certified copies. . ." (Italics ours.)

It cannot be gainsaid that the language of the Legislature is inept, and that there is considerable room for the contention that the language used in Act No. 28 means what the municipality contends it means. Yet it by no means clearly says so, and it does represent a change of language that previously did clearly provide that the said books shall remain "in the files of the respective municipalities". When read in the light of its historical background, the language involved is at least ambiguous. And if it is ambiguous, we are justified in inquiring into the purpose of the statute in our effort to determine what the Legislature meant by the said phraseology. (*De Castro* v. *Board of Commissioners,* 59 P.R.R. 673; Crawford, Statutory Construction, §§164–5, pp. 256–261; §§174–5, pp. 276–284.)

Once we find that the language in question is at least ambiguous and is reasonably susceptible of two interpretations, we find no reason within the present statute for concluding that the Legislature meant to provide that the said old civil registry books must be kept in the city halls of the respective municipalities. Indeed, the appellant itself does not take this position. It argues only that the statute clearly so provides. But since we find nothing in the 1935 statute which specifically provides that these books must be kept in the city halls, and since the whole theory of the present Act is directed toward putting the Commissioner of Health in complete control of vital statistics—the power of appointment and removal, the location of the offices of the registrars in departmental quarters, the placing of the old books under his jurisdiction and authority, and placing of

the immediate custody of the old books under registrars who are appointed and subject to removal by the commissioner and who are the only officials now authorized to issue certified copies of records, all point unmistakably in this direction—we hold that the Legislature in this somewhat obscure language meant to provide that the said books must be kept within the limits of the municipalities, but not necessarily in the city halls thereof.

The judgment of the district court will be affirmed.